693 S.E.2d 276 (2010)
Robyn MUGNO, Plaintiff,
v.
Richard MUGNO and Liberty Computer Systems, Inc., Defendants.
No. COA09-1158.
Court of Appeals of North Carolina.
June 1, 2010.
*277 Smith Moore Leatherwood, LLP, by Sidney S. Eagles, Jr., Elizabeth Brooks Scherer, and Matthew N. Leerberg, Raleigh, for the defendant appellant.
Wake Family Law Group, by Michael F. Schilawski and Julianne B. Rothert, Raleigh, for plaintiff appellee.
HUNTER, JR., ROBERT N., Judge.
Richard Mugno ("Mr. Mugno") and Liberty Computer Systems, Inc. ("LCS"), (collectively "defendants") appeal the trial court's equitable distribution order granting an unequal distribution of the marital estate in favor of Robyn Mugno ("Mrs. Mugno"). On appeal, defendants argue that (1) the trial court lacked statutory authority to order LCS to make payments to Mrs. Mugno in its equitable distribution order, and (2) the court abused its discretion by ordering an unconscionably disproportionate distribution of the marital estate to Mrs. Mugno. While we agree that the trial court lacked the statutory authority to require LCS to make payments to Mrs. Mugno, we otherwise hold that the order is within the bounds of the district court's discretion.

I. FACTUAL BACKGROUND
Mr. and Mrs. Mugno were married on 23 April 1995 and two children were born of the marriage. Prior to their marriage, Mr. Mugno worked for Retail Computer Systems Corporation, a computer software company that serviced dry cleaning businesses. In 1993, two other individuals and Mr. Mugno bought Retail Computer Systems and changed its name to Liberty Computer Systems, Inc. ("LCS"). In 2006, LCS moved from New York where it was originally domiciled to North Carolina where the corporation was reincorporated as a North Carolina corporation, and the assets of the original entity were transferred to the new entity. As a North Carolina corporation, LCS continued to maintain the same officers and shareholders.
From the proceeds of the sale of their marital residence in New York, Mr. and Mrs. Mugno bought a house in Wake County, making a substantial down payment at the time of the initial purchase. Mrs. Mugno stopped working at the time the couple's children were born, and she and the children were residing in the residence on 21 December 2007, the date of the couple's separation, when Mr. Mugno vacated the home.
Prior to their separation on 18 November 2006, Mr. Mugno had arranged a $100,000 personal loan to him which was to be secured by a home equity line of credit ("HELOC") through USAA Savings Bank. The promissory note was not produced at trial. The deed of trust, which was not prepared by a North Carolina attorney, was signed and acknowledged by both Mr. and Mrs. Mugno at the Mugno's bank by a notary public on 5 January 2007, and was subsequently recorded on 25 January 2007 in the Wake County Registry. Shortly thereafter, Mr. Mugno withdrew approximately $100,000 from this line of credit and transferred the funds to LCS for the purpose of paying LCS debts, some of which were solely Mr. Mugno's, and to purchase the equity interest of one of the three founding shareholders in LCS.
In September 2007, Mr. Mugno met another woman in Tennessee. Prior to the date of separation, he placed a down payment on an apartment for this woman and purchased a car for her. Mr. Mugno subsequently listed the apartment as his address on bank applications and ultimately signed the apartment lease.
On 2 January 2008, Mr. Mugno and the President of LCS signed a purported "promissory note" which required LCS to pay off the Mugno's line of credit loan through a monthly payment by depositing the amount of the payment into the Mugno's joint checking account. On 3 March 2008, Mrs. Mugno filed a complaint in Wake County District Court seeking, among other relief, equitable distribution of property acquired during the couple's twelve-year marriage.
During the proceeding, both parties filed equitable distribution affidavits, listing all property claimed by each party to be either *278 marital or separate property, and gave the estimated fair market value for each item of property at the date of separation. In the affidavits, the parties disagreed as to whether LCS should be classified as separate or marital property. As such, LCS was deemed, by consent order, to be a necessary party. The consent order provided that LCS was being joined "as a party defendant in this action for purposes of equitable distribution only."
The equitable distribution issues, along with the other claims, were heard during a bench trial held on 13 November 2008. In their submissions to the trial court, the parties agreed that the fair market value of the marital home was $385,000 on the date of separation and that the mortgage indebtedness included a first mortgage in the amount of $194,424 and a second home equity mortgage in the amount of $92,969. As computed by the trial court, the percentage value of the marital home was approximately 88% of the gross marital estate. The value of LCS was not determined or included in the estate because the trial court concluded that it was the separate property of Mr. Mugno. The value of the purported "promissory note" was valued by Mr. Mugno at $96,000 and by Mrs. Mugno at $0. The court distributed the promissory note to Mr. Mugno and valued it at $0. The parties agreed upon the distribution of cars and credit card debt.
In an order entered on 20 March 2009, the trial court awarded the marital home to the wife to enable her to continue to raise the children therein. This decision necessitated the further conclusion that an unequal distribution of the couple's marital assets was equitable and awarded 86% of the marital estate to Mrs. Mugno and 14% to Mr. Mugno. The marital home represented 81% of the net marital estate. In addition, the district court ordered LCS to make monthly payments of $907.38 to Mrs. Mugno in repayment of the $100,000 HELOC which was taken out against the marital home by Mr. Mugno to fund LCS during the marriage. From this order, defendants gave timely notice of appeal.

II. JURISDICTION & STANDARD OF REVIEW
This Court has jurisdiction over defendants' appeal because the equitable distribution order is a final judgment of a district court in a civil action under N.C. Gen.Stat. § 7A-27(c) (2009). On appeal, when reviewing an equitable distribution order, this Court will uphold the trial court's written findings of fact "as long as they are supported by competent evidence." Gum v. Gum, 107 N.C.App. 734, 738, 421 S.E.2d 788, 791 (1992). However, the trial court's conclusions of law are reviewed de novo. Lee v. Lee, 167 N.C.App. 250, 253, 605 S.E.2d 222, 224 (2004). Finally, this Court reviews the trial court's actual distribution decision for abuse of discretion. White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

III. DISTRIBUTION OF LCS'S FUNDS
Defendants contend that the trial court erred by ordering LCS to pay Mrs. Mugno monthly payments for the $100,000 HELOC after the court classified the corporation as separate property. We agree.
Pursuant to the North Carolina Equitable Distribution Act, the trial court is required to determine whether the property is marital or divisible and "provide for an equitable distribution of the marital property and divisible property between the parties[.]" N.C. Gen.Stat. § 50-20 (2009). In accordance with the Act, the trial court is required to follow a three-step analysis: (1) identify the property as either marital, divisible, or separate property after conducting appropriate findings of fact; (2) determine the net value of the marital property as of the date of the separation; and (3) equitably distribute the marital and divisible property. See Little v. Little, 74 N.C.App. 12, 16-20, 327 S.E.2d 283, 287-89 (1985). With regard to the distribution phase, there is generally a presumption in favor of equal distribution. N.C. Gen.Stat. § 50-20(c). However, the trial court may conclude, within its discretion, that unequal distribution is equitable after considering the factors listed in N.C. Gen. Stat. § 50-20(c) and making sufficient findings of fact to support its conclusion. See id.
*279 It is clear from this record that LCS is not a sole proprietorship, but a corporation in which Mr. Mugno only owns stock. As a corporation, LCS is a separate legal entity which has more than one shareholder. While third-party entities, whether corporations or individuals, holding marital assets in trust or whom are transferees defrauding a creditor spouse may be subject to legal action to secure marital property in an equitable distribution action, there are no findings here to suggest that such subterfuge was present. Upchurch v. Upchurch, 122 N.C.App. 172, 176, 468 S.E.2d 61, 63-64 (1996).
Here, the trial court identified the property, determined that LCS stock was Mr. Mugno's separate property, and subsequently ordered LCS to pay Mrs. Mugno $907.38 each month in repayment of the HELOC which was taken out on the marital home for the purpose of supporting LCS. Pursuant to the Equitable Distribution Act, the trial court is only permitted to distribute marital and divisible property. N.C. Gen.Stat. § 50-20(a); see also Hagler v. Hagler, 319 N.C. 287, 289, 354 S.E.2d 228, 232 (1987) (providing that the Equitable Distribution Act does not affect separate property acquired before the marriage or given to one spouse by a third party). An equitable distribution order is not the proper means to hold LCS, a third party, responsible for a debt owed, and should Mrs. Mugno desire to further LCS's obligation to pay the HELOC, an equitable lien or another lawsuit would be the proper method for obtaining such relief. Accordingly, we hold that the trial court erred by ordering LCS to pay funds to Mrs. Mugno; therefore, we vacate paragraphs 6 and 7 of the trial court's equitable distribution order.

IV. UNEQUAL DISTRIBUTION
Mr. Mugno next argues that the trial court abused its discretion by ordering an unconscionably disproportionate distribution of the marital estate to Mrs. Mugno. We disagree.
As provided above, we review the trial court's distribution of the marital and divisible property pursuant to an abuse of discretion standard. Leighow v. Leighow, 120 N.C.App. 619, 621-22, 463 S.E.2d 290, 291-92 (1995). Where the trial court decides that an unequal distribution is equitable, the court must exercise its discretion to decide how much weight to give each factor supporting an unequal distribution. White, 312 N.C. at 777, 324 S.E.2d at 833. A single distributional factor may support an unequal division. Judkins v. Judkins, 113 N.C.App. 734, 741, 441 S.E.2d 139, 143 (1994).
In the present case, the trial court determined that an unequal distribution of the marital and divisible assets and debts was equitable. In making its determination the court made the following findings of fact with regard to the distributional factors:
a. Plaintiff earns less income than Defendant;
b. The marriage lasted twelve (12) years and the parties dated since Plaintiff was fourteen (14) years old;
c. Plaintiff is the primary caretaker of two (2) young children and has a need to occupy and own the marital residence and its household effects;
d. During the marriage, Plaintiff assisted Defendant in his career by caring for the minor children, maintaining the home, and using marital equity to help Defendant's business survive. Defendant was thereby able to continue his business and to travel and work; and
e. The primary marital asset is the marital home. Given the current market, the marital home is non-liquid in character.
Pursuant to the abuse of discretion standard, our Courts have held that where the trial court finds that a factor justifies an unequal distribution, that finding will not be disturbed on appeal if supported by competent evidence. See, e.g., Upchurch v. Upchurch, 128 N.C.App. 461, 495 S.E.2d 738 (1998); Becker v. Becker, 127 N.C.App. 409, 489 S.E.2d 909 (1997); Jones v. Jones, 121 N.C.App. 523, 466 S.E.2d 342 (1996). As such, we conclude that the court did not abuse its discretion by ordering an unequal distribution and affirm the remainder of the trial court's order.

*280 V. CONCLUSION
For the reasons stated above, we hold that the trial court erred by ordering LCS to pay Mrs. Mugno monthly payments for the HELOC after the court classified the corporation as separate property; however, the trial court did not abuse its discretion by ordering that the marital and divisible property be distributed unequally. In accordance with our decision, we vacate paragraphs 6 and 7 of the equitable distribution order and affirm the remainder of the order.
Vacated in part and affirmed in part.
Chief Judge MARTIN and Judge JACKSON concur.