NORTH MISSOURI RAILROAD COMPANY, Appellant, *v.* GEORGE W. STEPHENS, Respondent.

*Attorney—Authority.*—Where several suits were brought by the same plaintiff against different defendants—the defences being the same in each case—and the attorneys of the several parties agreed that all the cases should abide the final decision in one case; *held,* that the agreement was within the authority of the attorneys and was binding upon the parties.

*Appeal from Macon Circuit Court.*

· *Carr,* for appellant.

I. The law upon which the defence in the "Winkler case" was based having since been repealed, it can no longer be pleaded by the respondent as a defence to the cause of action alleged in the petition.

1. The agreement pleaded by the respondent, as a defence to the cause of action alleged in the appellant's petition, is not an agreement between the appellant and respondent to abide the final judgment that would be rendered in the "Winkler case," or that the same kind of a judgment should be rendered in this case as was in that. It does not purport to be such an agreement: it only purports to be an agreement between James Carr, R. S. Bevier, and A. L. Gilstrap, who style themselves " counsel for the respective parties plaintiff and defendant," and simply stipulates that " we will abide the final judgment which shall be rendered in said case," *i. e.* the " Winkler case." Now, there is no stipulation here that the North Missouri Railroad Company, party on the one side, and George W. Stephens, party on the other side, would abide the final judgment which would be rendered. in the

" Winkler case"; or that said parties agreed, or even were willing, that the same kind of a judgment should be rendered in this case as in that case.    Note the language used : " We will abide the final judgment."   The personal pronoun " *we* " is used, and in the first person plural.   If the appellant and the respondent had been the contracting parties intending to bind themselves, the third person would have undoubtedly been used.  The third person is the only proper person to be used in speaking of a railroad corporation ; it is the person that is always used.   It follows, then, that this is only an agreement between counsel for their own private convenience, to save the trouble of trying the other cases. It is altogether voluntary ; it creates no legal rights or obligations, either as to the appellant and respondent, or even as to their counsel, which a court, sitting to enforce legal rights and obligations, can enforce.  (Hunt v. Johnson, 23 Mo. 432 ; Marguard v. Reiter, 30 Mo. 248.)

2. There is no consideration to support said agreement ; it is a mere *nudum pactum*, and not binding on the appellant.

3. It is not within the scope of an attorney's employment or authority to make an agreement of this kind ; and it is not pretended that the attorneys for the appellant had any positive authority to do so.   (Graham v. Gale, 7 Cow. 739 ; *id.* 453 ; 7 Mass. 19 ; 10 Wend. 89 ; Wells v. Evans, 20 Wend. 250 ; Stackhouse et al. v. O'Hara's Exec'rs, 14 Pa. 88.)

II.  The law upon which the defence in the "Winkler case" was based having been repealed, it can no longer be pleaded by the respondent as a defence to the cause of action alleged in the petition.

The defence as pleaded is *ipso facto* rendered null and void. If the "Winkler case" were now pending, that defence would be altogether nugatory ; and if nugatory in the "Winkler case," is it not so in this case?  It is based altogether upon a law which has no existence.   There is nothing to bottom this defence upon now.

So far is this doctrine carried, that where a penalty is im-

posed by act of Congress and the law expires, the forfeiture cannot be enforced, although there was a judgment below. The repeal of the law imposing the penalty is of itself a remission. (U. States v. Schr. Peggy, 1 Cranch, 103; Yeaton et al. v. U. States, 5 Cranch, 281; U. S. v. Ship Helen, 6 *id.* 203; U. S. v. Morris, 10 Whea. 246; Butter v. Pennsylvania, 10 How. 402; State of Md. v. Balt. & Oh. R.R. Co., 3 How. 534; Connor v. Bent, 1 Mo. 169; Hartwig v. People, 22 N. Y. 95.)

*Taylor & Gilstrap*, for respondent.

The agreement, as made by the attorneys of the parties, was written out, signed, and filed in the court below, and was made within the scope of their authority, and is binding upon the parties. (Gattend & Gravillen v. Smart, 6 Cow. 385; Quarles & Thompson v. Porter, 12 Mo. 84; Hunt v. Johnson, 23 Mo. 432; Houston v. Mitchell, 4 S. & R. 309; Marguard v. Reiter, 30 Mo. 248; Doods v. Doods, 9 Barr. 315; Holder v. Parker, 7 Cranch, 452; and cases therein cited.)

WAGNER, Judge, delivered the opinion of the court.

Plaintiff brought suit against the defendant, in the Circuit Court of Macon county, on subscription to stock. Several other suits precisely similar were brought at the same time, in the same court, against different defendants, and among them one by the name of Winkler. The same defence was made in each case. The attorneys for the respective parties entered into a written agreement, stating that, as the same facts and the same questions arose in all the causes mentioned, they would therefore abide the final judgment that should be rendered in the case of the plaintiff against Winkler; and that a like judgment should be rendered in each of the several cases. Upon a trial of the cause in the Circuit Court, judgment was given in favor of Winkler; from which the plaintiff appealed to the Supreme Court, in which court the judgment was affirmed.

As preliminary to the main question, it may be necessary to state that the defence relied on, and which prevailed, was the violation by the North Missouri Railroad Company of the act of 1855 to prevent illegal banking. (R. C. 1855, p. 286, § 9.) After the decision in the Supreme Court, so much of that act as refers to this controversy was repealed. (Sess. Acts 1863, p. 5.) The court below rendered judgment for defendant in accordance with the above agreement, and, after an ineffectual attempt on behalf of plaintiff to obtain a new trial and arrest the judgment, the cause is appealed to this court.

The position assumed by the appellant's counsel is, that, the Legislature having repealed the penalty contained in the act of 1855, a valid and subsisting obligation exists against the respondent, and that the attorneys had no authority to enter into the agreement, and that it is therefore void. The whole question is involved in the binding force and validity of the agreement. How far an attorney-at-law may bind his clients by his arrangements, in a case without special instructions or authority, is not definitely settled. There is no doubt that many entries which he might make on the docket—agreements about continuances, admissions about evidence, or the general conduct of the trial—would bind his client. It is said, in many cases, that he has a right to submit a cause to arbitration ; but this doctrine has been restricted, in others, to suits actually pending in courts ; whilst it is generally denied that he has a right to enter into a compromise without authority from his client, either express or implied. The arrangement in this case is not a compromise according to the usual acceptation of that term, for that generally applies to releasing a part of the debt, taking land instead of money, or changing the nature and character of the thing to be recovered; it comes nearer within the general management of the case.

In the Bank of Georgetown v. Geary (5 Pet. 99), suit had been instituted upon a promissory note against the drawer and endorser, and the attorney for the bank requested the

endorser to confess a judgment on the note, assuring her, if she did so, and did not dispute her liability, the bank would immediately proceed, by execution, to make the amount thereof from Merril, the principal debtor, who (he assured her) had sufficient property to satisfy the same; and advised her that she would thus be saved from liability for the debt— prevailed on her to make no defence against the suit at law, but voluntarily to confess a judgment thereon. No execution was issued against Merril according to the terms of the agreement with the attorney, but the bank continued to indulge him, and permitted him to leave, taking with him all his property beyond the process of the court. The judgment debtor filed her bill for the purpose of obtaining an injunction to restrain the bank from proceeding to collect the money on the judgment. The bill charged that, at the time of confessing the judgment, a valid legal defence existed against said suit which would have defeated the bank's right to recover on the endorsement, the bank not having made the due and legal demand and given due and legal notice so as to bind the endorser; that the attorney of the bank well knew the same, and, to prevent the complainant from contesting the same, made the proposition above stated, &c. The bank, in its answer to the complainant's bill, denied that its attorney had any authority to hold out any inducement to complainant to confess judgment, or make any promises, as set forth in the bill; and, as a further defence, contended that the agreement was without consideration and void: but the court held that the attorney had authority to make the agreement, and that the consideration was sufficient even though a subsequent decision showed that the defence of the endorser could not have prevailed.

There are many marks of similarity between the two cases. In the absence of any adjudication of the question involved in this case, the rights of the appellant were at least doubtful. Should the suits be regularly litigated step by step, and ultimately determined adversely, the costs accruing in the several courts would, of course, have been a

charge or a burden; the arrangement was, therefore, highly judicious and convenient. But it is shown by the decision of this court in the Welker case, that respondent had a good and substantial defence to appellant's cause of action at the time the agreement was entered into, and his rights cannot be prejudiced by the subsequent repeal of the law, when he was precluded from prosecuting his defence by an agreement solemnly entered into in good faith. The facts show that he suffered material injury, and that is a sufficient consideration; and to permit a judicial decision now to annul an agreement made under a different state of things, would be sanctioning bad faith and setting a most mischievous precedent. In addition to this, the case was permitted to slumber several years in the court below, and no act of the appellant ever manifested an intention of disturbing the arrangement entered into until the Legislature repealed the law on which respondent relied for a defence. The length of time that intervened when no action was taken would warrant us in the presumption that the client had ratified the act of the attorney. Every consideration of justice, equity, and moral obligation, dictates that the stipulation of the attorneys should be carried out and enforced.

The other judges concurring, the judgment is affirmed.