NORFOLK SOUTHERN RAILWAY COMPANY AND MARTIN-MARIETTA CORPORATION v. MARVIN V. HORTON
AND
NORFOLK SOUTHERN RAILWAY COMPANY AND MARTIN-MARIETTA CORPORATION v. J. I. OAKLEY

No. 683SC367

(Filed 15 January 1969)

**1. Trial § 6—   stipulations encouraged**

Courts look with favor on stipulations designed to simplify, shorten, or settle litigation and save costs to parties.

**2. Trial §§ 6, 56—   stipulation to abide result of another suit — waiver of jury trial**

As a general rule a stipulation to abide the event of another suit is binding as long as the causes of action remain the same; it operates as a waiver of the right of trial by jury and forecloses all questions which might have been, but were not, presented in the other cause.

**3. Trial § 6—   stipulation to abide result of another suit**

Three actions were instituted by the corporate parties seeking injunctions to prevent interference with a railroad right of way, and two actions were instituted against the corporate parties seeking removal of the right of way easements as a cloud on title, the basic question in all the actions being whether the right of way easements had been abandoned. The parties to all five actions stipulated "that the rulings and judgments rendered" in the consolidated trial of two of the cases "shall be the rulings affecting and applied to" the remaining three cases. *Held:* Where judgments of involuntary nonsuit were entered in the two cases which were tried, judgments of nonsuit were properly entered in the three remaining cases on the basis of the stipulation without regard to whether the facts in the cases are the same, it being the intention of the parties to dispose of all five cases by the trial of two which were representative of the entire controversy.

**4. Trial § 6—   stipulations — method of setting aside**

A party to a stipulation who desires to have it set aside should seek to do so by some direct proceeding, ordinarily by motion to set aside the stipulation in the court in which the action is pending.

**5. Trial § 6—   setting aside a stipulation**

Application to set aside a stipulation must be seasonably made.

Appeal by plaintiffs from *May, J.,* 8 April 1968 Session, Pitt Superior Court.

These two actions, and three others, which will be referred to herein, concern controversies over a railroad right of way between the towns of Fountain and Farmville in Pitt County, North Carolina. The right of way was part of the line of the East Carolina Railroad Company from Tarboro to Farmville. The East Carolina Railroad Company operated a railroad as a common carrier over this right of way from the time it was organized prior to 1900 until 16 November 1965. At that time it ceased operation in accordance with an order of the Interstate Commerce Commission dated 14 October 1964. Thereafter East Carolina Railroad Company conveyed the right of way to its parent, the Atlantic Coast Line Railroad Company. Subsequently the Atlantic Coast Line Railroad Company conveyed the right of way to the Norfolk Southern Railway Company. By lease dated 1 January 1967, Norfolk Southern Railway Company leased the said right of way to Martin-Marietta Corporation for a term of fifty years for the purpose of hauling by its own (Martin-Marietta) motive power cars of crushed stone from its quarry at Fountain to the connection point with the Norfolk Southern Railway tracks at Farmville.

All of the individual parties in the five lawsuits claim to be the successors in title to the various grantors of the original easements to the East Carolina Railroad Company, and it is their contention that the right of way was abandoned for railroad purposes by the action of East Carolina Railroad Company, that no railroad operations have been conducted thereon since that time, and that they now own the fee unencumbered by the easements.

The corporate parties contend that they are assignees of the right of way and have the right to the continued use of same.

Four of the five lawsuits were instituted prior to 1 January 1967, and the corporate party in those four was the Atlantic Coast Line Railroad Company. However, through various motions and orders the present corporate parties have been substituted. The present corporate parties are originally named in the fifth action which was instituted after 1 January 1967. In the order of the date upon which the complaints were filed, the five actions are as follows:

One:  Norfolk and Southern Railway Cmpany, and Martin-Marietta Corporation vs. Marvin V. Horton. Complaint in this action was filed 23 June 1966, wherein the relief sought was the issu-

ance of an injunction to prevent the placing of barricades across the subject right of way.

Two: Madeline H. Rountree, Novella H. Murray and husband, W. C. Murray vs. Norfolk and Southern Railway Company and Martin-Marietta Corporation. Complaint in this action was filed 25 August 1966 wherein the relief sought was the removal of the subject right of way easement as a cloud on plaintiffs' title to the unencumbered fee.

Three: Howard M. Allen and wife, Mary Jo Allen, and W. G. Allen and wife Joy A. Allen vs. Norfolk and Southern Railway Company, and Martin-Marietta Corporation. Complaint in this action was filed 8 September 1966, wherein the relief sought was the removal of the subject right of way easement as a cloud on plaintiffs' title to the unencumbered fee.

Four: Norfolk and Southern Railway Company, and Martin-Marietta Corporation vs. J. I. Oakley. Complaint in this action was filed 19 September 1966 wherein the relief sought was the issuance of an injunction to prevent the threatened removal of the tracks from portions of the subject right of way.

Five: Norfolk and Southern Railway Company, and Martin-Marietta Corporation vs. Howard N. Allen, Frances O. Starling, Annie Lee Fulford, J. L. Nanney, C. G. Morgan, Johnnie J. Wooten, Georgia Pollard, A. C. Monk, Jr., R. T. Monk, W. C. Monk, J. Roderick Harris, Mrs. Sallie Ruth Horton, Novella Horton Murray, and Tabitha M. DeVisconti. Complaint in this action was filed 3 April 1967, wherein the relief sought was the issuance of an injunction to prevent threatened interference with the repair and maintenance of the tracks on the subject right of way, and the operation of trains thereon.

As can be seen from the above summary, three of the five actions (Numbers One, Four and Five) were instituted by the corporate parties seeking injunctions to prevent interference with their use of the subject right of way. Two of the five actions (Numbers Two and Three) were instituted by the individual parties seeking the removal of the right of way easements as a cloud on their title.

At the 23 October 1967 Session of Pitt Superior Court, Bone, J., presiding, two of the five cases were consolidated for trial. They were numbers Two and Five, number Two having been instituted by the individual parties, and number Five having been instituted by the corporate parties. Upon entry into the trial of the two cases all of the parties entered into a stipulation as follows: "That the

rulings and judgment rendered in the above case shall be the rulings affecting and applied to the following cases appearing on this docket:" (there followed then a listing by title and docket number of the cases summarized above as numbers One, Three and Four; numbers One and Four being the two cases which have been appealed to this Court.)

At the conclusion of all of the evidence in the trial of the two cases at the 23 October 1967 Session, Judge Bone entered separate judgment of nonsuit in each case. The plaintiffs in each case (the individual parties in one, and the corporate parties in the other) gave notice of appeal, but the appeal was not perfected in either case. Thereafter the corporate parties petitioned this Court for *writ* of *certiorari* to perfect their appeal (68SC149PC, filed 2 May 1968) which was denied by this Court in conference 22 May 1968. This petition for *certiorari* to review the order of Bone, J., entered at the 23 October 1967 Session was filed in this Court twenty-one days after the entry of the judgment of Judge May on 11 April 1968 from which the corporate parties now appeal.

Motion was duly filed by the individual parties seeking judgments of nonsuit, in accordance with the stipulation, in the three remaining cases (numbers One, Three and Four). This motion was heard before Judge May at the 8 April 1968 Session and he ruled, in effect, that the stipulation entered into by the parties before Judge Bone was binding upon them as to the disposition of the three remaining cases, and entered judgments of nonsuit in each of the three remaining cases. From this ruling and the entry of judgments of nonsuit in the three cases, the corporate parties appealed in the two cases in which they are plaintiffs (numbers One and Four). The individual parties did not appeal in the one case in which they are plaintiffs (number Three).

*James, Speight, Watson & Brewer, by W. H. Watson, for Norfolk Southern Railway Company, appellant.*

*Joyner & Howison, by W. T. Joyner, Jr., for Martin-Marietta Corporation, appellant.*

*H. Horton Rountree, Kenneth G. Hite, Sam O. Worthington, E. Burt Aycock, Jr., and Marvin V. Horton, by Marvin V. Horton, for appellees.*

Brock, J.

[3] Plaintiffs assign as error the signing and entry of the judgments of nonsuit in the two cases.

Plaintiffs succinctly state their contention to be that the stipulation entered into at the 23 October 1967 Session provides that "the rulings and judgment rendered" in the two cases tried at that session would be binding on the parties in the other three cases *only* to the extent that those rulings were applicable to the *facts* of the other three cases. They contend, therefore, that the facts of all the cases must be compared to determine the extent to which the stipulation is binding in the other three cases. This seems to be another way of saying that the stipulation is binding in the other three cases only to the extent that the facts are the same as in the first two.

Even without knowledge of any of the evidence in any of the five cases, we can readily surmise that the facts in each case are different; they concern different parties, about different conduct, and different sources of title. The construction of the stipulation now sought by plaintiffs would render it inefficacious.

At the 23 October 1967 Session all of the parties in the five lawsuits solemnly agreed "that the rulings and judgment rendered" in the two cases tried at that session "shall be the rulings affecting and applied to" the remaining three cases. At that time all of the parties were aware that the facts of each of the five cases would be different, and plaintiffs are in no position to now complain that the court has held them to their solemn agreement. Stipulations should receive a fair and liberal construction, in harmony with the apparent intention of the parties.

[1] Courts look with favor on stipulations designed to simplify, shorten, or settle litigation and save costs to parties, and such practice is encouraged. *Heating Co. v. Construction Co.*, 268 N.C. 23, 149 S.E. 2d 625.

[2] "As a general rule a stipulation to abide the event of another suit is binding as long as the causes of action remain the same; it operates as a waiver of the right of trial by jury, and forecloses all questions which might have been, but were not, presented in the other case." 83 C.J.S., Stipulations, § 19, p. 40.

In *Commercial Assurance Co. v. Lumber Co.*, 130 Ga. 191, 60 S.E. 554, plaintiff lumber company sued defendant assurance company on a fire insurance policy. In addition to the policy in suit, there was another policy issued by a different insurance company covering the same property on which the lumber company had brought an action. It was stipulated that the present case would abide the result of the other and that the final result of the other was to be the final result in the present case. Judgment was recov-

ered against the other insurance company for the full amount of the policy. When the case against the present insurance company came on for trial, it was contended by the insurance company that it was bound by the former judgment only to the extent of determining a liability on the policy. It was held that there was no error in the trial court ruling in favor of the plaintiff lumber company for the full amount of the policy in the present suit in view of the stipulation which had been made to abide the result in the other case. See also, *Jarrett v. McLaughlin*, 123 Ga. 256, 51 S.E. 329.

In *North Mo. R. R. Co. v. Stephens*, 36 Mo. 150, 88 Am. Dec. 138, several suits were brought by the same plaintiffs against different defendants. The attorneys for the parties agreed that all of the cases should abide the final decision in one case, and it was held that such agreement was binding upon the parties. This was held to be so although the question involved in the case which was tried had been changed by an act of the legislature which might have changed the result in the remaining cases except for the stipulation.

Plaintiffs argue in their brief the principles of *res adjudicata* in support of their position that the evidence must be compared to determine whether the cases are the same. However, we are not concerned with the application of the principles of *res adjudicata;* we are concerned with the interpretation of a stipulation.

[3]    All five of the cases are concerned with the one basic question: Does the conduct of the corporate parties, or their predecessors in interest, constitute an abandonment of the easements of right of way? It is the resolution of this basic question which would determine whether any of the parties are entitled to the relief prayed in their complaints. Different factual situations would likely develop in each case with respect to the conduct and claims of the individual parties, but it is the conduct of the corporate parties and its effect which is the basic inquiry. The evidence of this, it seems, would be the same in each case. All of the parties were aware of these circumstances at the time of entering into the stipulation, and it was their intention to dispose of all five cases by the trial of two which were representative of the entire controversy. We do not know why Judge Bone entered judgments of nonsuit in the two cases that were tried; those cases are not before us for review, and Judge Bone's judgment is presumed to be correct. Nevertheless, the fact that the two cases were not disposed to the present liking of the corporate plaintiffs does not in any way change the effect of the stipulation.

Under our Rule 27 plaintiffs cite to us as additional authority the cases of *The Carso*, 69 F. 2d 824, and *Huegel v. Huegel*, 329 Mo.

571, 46 S.W. 2d 157. In *Carso* the parties stipulated that "the issues" in the present suits "shall be deemed to be controlled by the decision to be rendered" in *The Carso,* except "the special issues claimed to exist" and "now submitted." Clearly such a stipulation controlled only to the extent that the issues were similar, and the case is distinguishable upon that ground. *Huegel* was a *caveat* proceeding alleging undue influence. Another action was pending to set aside a stock transfer on the grounds of undue influence. In *Huegel* the parties stipulated to abide the result of the suit to set aside the stock transfer. Thereafter, in the stock transfer suit the plaintiff was allowed to amend to allege a constructive trust, and obtained a judgment declaring the subject stock to be held in trust. The court in *Huegel* held that the stipulation was not binding because the theory of the stock transfer case was changed after the stipulation was entered. This case is also clearly distinguishable upon its facts from the case now under consideration.

We note that after the judgments of nonsuit were entered in the two cases tried at the 23 October 1967 Session, plaintiff appellants did not seek relief from the stipulation which they now contend is not binding. So far as the record discloses they took no action until the motion of individual parties for judgments in accordance with the stipulation was heard before Judge May in April 1968.

[4, 5]   "A party to a stipulation who desires to have it set aside should seek to do so by some direct proceeding, and, ordinarily, such relief may or should be sought by a motion to set aside the stipulation in the court in which the action is pending, on notice to the opposite party." 83 C.J.S., Stipulations, § 36, p. 93. "Application to set aside a stipulation must be seasonably made; delay in asking for relief may defeat the right thereto." 83 C.J.S., Stipulations, § 36, p. 94.

The judgments appealed from are

Affirmed.

BRITT and PARKER, JJ., concur.