IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 23-339

Filed 20 February 2024

Pitt County, No. 18 CVD 728

CAROL SPERRY SMITH, Plaintiff,

v.

DALE PRESTON SMITH, Defendant.

Appeal by Plaintiff from an equitable distribution judgment and order entered
31 August 2022 by Judge Lee F. Teague in Pitt County District Court. Heard in the
Court of Appeals 14 November 2023.

*W. Gregory Duke, for Plaintiff-Appellant.*

*The Graham Nuckolls Conner Law Firm, PLLC, by Jon G. Nuckolls, for
Defendant-Appellee.*

WOOD, Judge.

Carol Smith ("Plaintiff") appeals the trial court's judgment and order of
equitable distribution awarding an unequal distribution of the marital estate. For
the reasons discussed herein, we affirm the trial court's decision.

## I.    Factual and Procedural Background

Plaintiff and Dale Smith ("Defendant") were married on 1 June 2002,
separated on 28 January 2018, and granted a divorce on 28 May 2019. The parties
have no children together.

During the marriage and until 2016, Plaintiff worked part-time as an adjunct

professor at Pitt Community College in Greenville, North Carolina. A month before separation, Plaintiff began a new job working as a part-time caregiver. Plaintiff is currently unemployed but receives $378.00 per week in unemployment benefits and $611.00 in Social Security benefits. Plaintiff is alleged to have suffered a medical condition which prevents her from lifting anything greater than 25 pounds. During the marriage, Defendant started a business, Dale's Heating and Air Conditioning, which he incorporated in 2004. Defendant paid himself an annual salary of approximately $30,000.00. He currently has pension benefits of $450.46 and $103,044.85 in a 401(k)-retirement plan. Defendant continues to work in a limited capacity since suffering a heart attack in 2019.

While the parties were married, they purchased property together on 17 November 2005, and the property was jointly deeded in both parties' names as tenants by the entirety. The parties later constructed a home on the property ("former marital residence"), located at 2323 Persnickety Lane in Grifton, North Carolina, and lived there together until their separation in 2018. To pay for the purchase of the former marital residence lot, Defendant liquidated personal property, namely stock inherited from his grandmother. Later, Defendant obtained a $70,000.00 line of equity secured by his separate property located at 4080 Racetrack Road ("Racetrack Road") in Grifton, North Carolina, in order to construct a barn and home on the former marital residence lot. The property at Racetrack Road was purchased by Defendant before his marriage to Plaintiff. A shop building was later

constructed on the former marital residence lot. The cost of its construction was funded by the further liquidation of Defendant's inherited stock. Additionally, Defendant entered into a personal $10,050.00 promissory note on 9 May 2008 to complete the building of the former marital residence. The note was paid off on 15 September 2016, prior to the parties' separation.

During their marriage, Defendant paid the expenses on the former marital residence, including the homeowners' insurance, mortgage, utilities, and taxes. Defendant also paid the parties' automobile insurance. Plaintiff paid the cable bill and bought groceries.

On 21 September 2016, the parties obtained an equity line of credit ("HELOC") in the amount of $49,000.00 secured by the former marital residence. However, the parties did not borrow money from the HELOC at the time it was created. In December 2017, Defendant withdrew $49,000.00 from the HELOC and deposited the funds into his personal bank account. Defendant testified that he accessed the line of credit in case the marriage failed and to prevent Plaintiff from taking the money and disappearing with it.

When the parties separated on 28 January 2018, Defendant left the former marital residence while Plaintiff remained in the home. On 23 February 2018, Plaintiff filed a complaint against Defendant for Divorce from Bed and Board, Post-Separation Support, Alimony, Equitable Distribution, and Attorney's Fees. Defendant filed a response and counterclaims for Divorce from Bed and Board,

Equitable Distribution, and Motion to Return Separate Property on 4 May 2018.

From 28 January 2018 until 15 May 2018, Plaintiff lived at the former marital residence. During this period of time, Defendant continued to pay expenses on the former marital residence, including insurance, mortgage, utilities, payments on the line of credit, and taxes. After Plaintiff moved out, Defendant returned to the former marital residence.

On 14 January 2019, both parties made stipulations addressing the two mentioned properties in a written and filed agreement. First, the parties stipulated that the former marital residence at Persnickety Lane be classified as marital property with a property value of $247,011.00. Second, the parties stipulated that "Plaintiff and Defendant own marital property located at . . . 4080 Racetrack Road, Grifton, North Carolina," and that the "value of the marital property . . . is valued at $46,563.00."

On 2 August 2022, Defendant filed a motion to strike and set aside the 14 January 2019 stipulation. In his motion, Defendant alleged that at all relevant times, (1) he was the sole owner of the 4080 Racetrack Road, Grifton, North Carolina property; (2) he owned the property prior to his marriage to Plaintiff; (3) the parties mortgaged the Racetrack Road property during the marriage in order to finance the purchase of the former marital residence; (4) he "at no time ever conveyed any part of said Racetrack Road to Plaintiff"; (5) he "mistakenly signed a stipulation on January 14, 2019" stating Racetrack Road was marital property; and (6) "it would be

inequitable to allow the mistaken stipulations of Defendant's separate property to be classified as marital."

On 29 August 2022, before the hearing on equitable distribution, the parties entered a set of stipulations via a pre-trial order, which the parties then filed with the trial court. In the pre-trial order, the parties stipulated to their disagreement as to the classification of the Racetrack Road property, but agreed the property should be distributed to Defendant. Furthermore, the parties disagreed as to the classification of the HELOC debt on the Racetrack Road property. Plaintiff contends the debt should be classified as mixed and assigned to Defendant; Defendant contends the debt should be classified as marital and be assigned to him. During opening statements at the hearing, Plaintiff's attorney explained that Defendant's trial counsel "recently filed a motion to strike and set aside the stipulations" and stated counsel was "fine with the Court just hearing the evidence and considering those motions or that motion in relation to those stipulations during this trial."

In the judgment and order for equitable distribution entered 31 August 2022, the trial court incorporated by reference the parties' pre-trial order and noted that the parties had made stipulations regarding their property in the pre-trial order. The trial court classified the Racetrack Road property as the separate property of Defendant. However, the trial court found the parties incurred marital debt when the Racetrack Road property was used as collateral for an equity line of credit to pay for the construction of the former marital residence. The trial court assigned the

5

HELOC debt taken out on the Racetrack Road property to Defendant.

The trial court also found the parties agreed to marital debt in the form of a HELOC taken out on the former marital residence in 2016. The court found that Defendant withdrew "all $49,000 just a few months before the parties separated," so that the debt is classified as marital debt, "but there would [not] have been any debt but for the action of Defendant at the time of the impending separation." As such, while Defendant used proceeds from the sale of the Racetrack Road home to "pay back the loan postseparation, he will receive no credit for these payments because he unnecessarily created the marital debt."

The trial court determined Defendant had separate property valued at $179,239.27, and Plaintiff had separate property valued at -$195.00. The trial court determined that the total net value of the marital estate was $209,690.24. The trial court distributed the Persnickety Lane former marital residence to Defendant after finding that Defendant had paid for the residence with his separate property and a loan taken out on his separate property while Plaintiff had contributed none of her own monies towards the marital home and that Defendant had preserved the estate after the parties separated. After consideration of the relevant equitable distribution factors, the trial court determined an unequal division of marital property, marital debt, and divisible property would be equitable. The trial court further found that "[i]f the former marital residence is removed, then both parties have a negative estate." The trial court based its determination for unequal distribution on several

6

factors including: (1) the former marital residence as non-liquid real property is "the biggest asset" and the "other more liquid accounts that are being distributed to Defendant have been liquidated to pay off marital debt"; (2) while Plaintiff lived in the former marital home for approximately three and a half months post-separation, Defendant continued to pay the expenses related to the home, and after Plaintiff moved out, Defendant moved back in and continued to pay all related expenses; (3) Defendant sold his inherited stocks to pay for the former marital residence, took out a HELOC on his separate property at Racetrack Road to pay for the marital home, and eventually sold that property to pay off the loan, and Plaintiff did not contribute her own monies towards the marital residence.

The trial court awarded Defendant marital property and debt in the net amount of $217,189.44 and Plaintiff was awarded a net amount of -$7,499.20. The trial court distributed all the property and debt as was stipulated by the parties in the pre-trial order but did not make any other distributive award. Other than finding the parties had entered into stipulations in the pre-trial order, the trial court did not otherwise make a ruling concerning whether to grant Defendant's motion to strike the stipulation entered into by the parties in January 2019. On 28 September 2022, Plaintiff filed a notice of appeal with this Court from the equitable distribution judgment and order.

## II.    Analysis

On appeal, Plaintiff contests a number of issues. We address each in turn.

7

**A. Stipulation regarding the classification of the Racetrack Road property.**

First, Plaintiff argues that the trial court erred in disregarding the parties' stipulation on 14 January 2019 classifying the property at Racetrack Road as marital property and assessing its value at $46,563.00 because the stipulation was never set aside by the trial court. Plaintiff further argues the trial court failed to make findings of fact in its order setting aside the 2019 stipulation order, so that the stipulation remained binding on the parties and the trial court.

In response, Defendant contends the trial court properly addressed the three statements made in the stipulation and did not need to set aside any stipulation. Additionally, Defendant argues that Plaintiff "focuses solely on the stipulation made in 2019 and completely disregards the later stipulation made in the Pre-Trial Order that displayed disagreement between the parties regarding classification of the Racetrack Rd. property."

As a general rule, this Court has noted that "[a]ny material fact that has been in controversy between the parties may be established by stipulation." *Estate of Carlsen v. Carlsen,* 165 N.C. App. 674, 678, 599 S.E.2d 581, 584 (2004). We analyze stipulations between parties as if they were contracts and consider the intent of the parties at the time of contracting. *Stovall v. Stovall*, 205 N.C. App. 405, 409–10, 698 S.E.2d 680, 684 (2010). Additionally, stipulations must be written in terms that are "definite and certain." *State v. Powell*, 254 N.C. 231, 234, 118 S.E.2d 617, 619 (1961).

Pursuant to a 29 August 2022 pre-trial order, the parties entered into an

additional set of stipulations days before the equitable distribution hearing which the parties then filed with the trial court. The trial court correctly stated in its Judgment and Order that "[o]n Schedule E of the Pre-trial Order, the parties disagree as to the classification of this item [Racetrack Road property] but agree on the value and distribution." This subsequent stipulation reflects that the parties do not agree the Racetrack Road property is marital. In the pre-trial order, Plaintiff contends the said property is a mixed (not marital) asset while Defendant contends it is his separate property. Both stipulations, however, reflect the parties' intent to stipulate the value of the Racetrack Road property. In fact, the trial court's order lists the value of the Racetrack Road property as the value amount listed in the parties' January 2019 stipulation and in the pre-trial order. Therefore, the trial court properly applied all stipulations to its equitable distribution judgment.

**B. Trial court's finding that an equal division of marital property was not equitable.**

Plaintiff next argues that the trial court's findings of fact do not support an unequal division of the marital assets and specifically contests conclusion of law 4. Conclusion of law 4 states: "Based on the consideration of the distributional factors in Equitable Distribution as described in the above Findings of Fact and arising from the evidence, an unequal division of marital property, marital debt, and divisible property is equitable." Specifically, Plaintiff contends the trial court erred in failing to include specific language pursuant to N.C. Gen. Stat. § 50-20(c), which states,

"There shall be an equal division by using net value of marital property and net value of divisible property *unless the court determines that an equal division is not equitable.*" (Emphasis added). We disagree.

"Equitable distribution is vested in the discretion of the trial court and will not be disturbed absent a clear abuse of that discretion." *Wiencek-Adams v. Adams*, 331 N.C. 688, 691, 417 S.E.2d 449, 451 (1992). In an equitable distribution order, the findings of fact "must support the determination that the marital property has been equitably divided." *McIver v. McIver*, 92 N.C. App. 116, 127, 374 S.E.2d 144, 151 (1988) (quotation marks omitted).

By law, there must be an "equal division" of marital property in an equitable distribution proceeding "unless the court determines that an equal division is not equitable." N.C. Gen. Stat. § 50-20(c); *White v. White*, 312 N.C. 770, 775, 324 S.E.2d 829, 832 (1985). "[T]he statute is a legislative enactment of public policy so strongly favoring the equal division of marital property that an equal division is made *mandatory* 'unless the court determines that an equal division is not equitable.' " *White*, 312 N.C. at 776, 324 S.E.2d at 832 (citing N.C. Gen. Stat. 50-20(c)) (emphasis in original).

Thus, if the trial court makes the determination "to divide a marital estate other than equally, the trial court must first find that an equal division is not equitable and explain why." *Lucas v. Lucas*, 209 N.C. App. 492, 504, 706 S.E.2d 270, 278 (2011). This Court has made clear, however, that "there is no case law requiring

a trial court to use 'magic words' indicating that an equal distribution is not equitable." *Carpenter v. Carpenter*, 245 N.C. App. 1, 14, 781 S.E.2d 828, 838 (2016).

In the present case, although the trial court did not use verbatim language from N.C. Gen. Stat. § 50-20(c) to indicate that an equal division of the marital property is not equitable, the trial court addressed and applied the factors from N.C. Gen. Stat. § 50-20(c) to the evidence presented. The trial court found eight factors did not support unequal distribution, then determined that three factors indicated the need for an unequal distribution. Therefore, the trial court abided by the provisions of N.C. Gen. Stat. § 50-20(c) in providing explanations for the court's unequitable division of marital property and liabilities.

**C. Trial court's findings related to the evidence of distributional factors presented at the hearing.**

Next, Plaintiff argues the trial court erred in several findings of fact relating to the evidence presented at the hearing of the distributional factors pursuant to N.C. Gen. Stat. § 50-20(c). Plaintiff contends competent evidence was not presented at the hearing to support the trial court's findings of fact 30, 33, and 34. We address each finding in turn.

Pursuant to N.C. Gen. Stat. § 50-20(c), the trial court is to distribute the property equally unless the court determines that an equal division is not equitable. *Daetwyler v. Daetwyler*, 130 N.C. App. 246, 249, 502 S.E.2d 662, 664 (1998). The distributional factors are:

(1) The income, property, and liabilities of each party at the time the division of property is to become effective.

(2) Any obligation for support arising out of a prior marriage.

(3) The duration of the marriage and the age and physical and mental health of both parties.

(4) The need of a parent with custody of a child or children of the marriage to occupy or own the marital residence and to use or own its household effects.

(5) The expectation of pension, retirement, or other deferred compensation rights that are not marital property.

(6) Any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services, or lack thereof, as a spouse, parent, wage earner or homemaker.

(7) Any direct or indirect contribution made by one spouse to help educate or develop the career potential of the other spouse.

(8) Any direct contribution to an increase in value of separate property which occurs during the course of the marriage.

(9) The liquid or nonliquid character of all marital property and divisible property.

(10) The difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest, intact and free from any claim or interference by the other party.

(11) The tax consequences to each party, including those

federal and State tax consequences that would have been incurred if the marital and divisible property had been sold or liquidated on the date of valuation. The trial court may, however, in its discretion, consider whether or when such tax consequences are reasonably likely to occur in determining the equitable value deemed appropriate for this factor.

(11a) Acts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert the marital property or divisible property, or both, during the period after separation of the parties and before the time of distribution.

(11b) In the event of the death of either party prior to the entry of any order for the distribution of property made pursuant to this subsection:

> a. Property passing to the surviving spouse by will or through intestacy due to the death of a spouse.
>
> b. Property held as tenants by the entirety or as joint tenants with rights of survivorship passing to the surviving spouse due to the death of a spouse.
>
> c. Property passing to the surviving spouse from life insurance, individual retirement accounts, pension or profit-sharing plans, any private or governmental retirement plan or annuity of which the decedent controlled the designation of beneficiary (excluding any benefits under the federal social security system), or any other retirement accounts or contracts, due to the death of a spouse.
>
> d. The surviving spouse's right to claim an "elective share" pursuant to G.S. 30-3.1 through G.S. 30-33, unless otherwise waived.

(12) Any other factor which the court finds to be just and proper.

N.C. Gen. Stat. § 50-20(c).  Only one of those factors is required for a final judgment

and order of unequal distribution. *Judkins v. Judkins*, 113 N.C. App. 734, 741, 441 S.E.2d 139, 143 (1994). Further, a trial court must make written findings of fact as to the evidence used in support of each distributional factor. *Daetwyler*, 130 N.C. App. at 249, 502 S.E.2d at 665. The trial court's findings need not be "exhaustive," and simply must include the "ultimate" facts considered. *Id.*

The standard of review is whether there is competent evidence to support the findings of fact and, subsequently, whether the conclusions of law are supported by the findings. *Dechkovskaia v. Dechovskaia*, 232 N.C. App. 350, 352, 754 S.E.2d 831, 834 (2014). "[O]n appeal, findings of fact supported by competent evidence are binding." *Glaspy v. Glaspy*, 143 N.C. App. 435, 443 (2001). Further, we give great discretion to the trial court's consideration of facts, as the trial court is the fact finder in equitable distribution cases and has the "right to believe all, none, or some of a witness' testimony." *Zurosky v. Shaffer*, 236 N.C. App. 219, 240, 763 S.E.2d 755, 768 (2014).

First, Plaintiff challenges the court's finding of fact 30 which states:

> NCGS 50-20(c)(9) - . . . [T]he evidence shows that the biggest asset is non-liquid real property, the former marital residence. The other more liquid accounts that are being distributed to Defendant have been liquidated to pay off marital debt. Therefore, the Court finds this factor indicates the need for an unequal distribution.

Plaintiff argues that no evidence was presented at the hearing that the "more liquid accounts" distributed to Defendant "had been liquidated to pay off marital debt." We

14

disagree.

The evidence shows that Defendant contributed large sums of his separate property to benefit the marriage and to obtain the former marital residence. The trial court found that during the course of the parties' marriage, Defendant sold his inherited stock, took out a personal loan, and took out a HELOC on his separate property in order to purchase and pay for the upkeep of the former marital residence. These resources were continually accessed in order to pay off the marital debt accrued by the parties. Therefore, the trial court's finding of fact 30 is sufficiently supported by evidence.

Next, Plaintiff challenges finding of fact 33 which states:

> NCGS 50-20(c)(11a) - Acts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue, or convert the marital property or divisible, or both, during the period after separation of the parties and before the time of distribution. The Plaintiff lived in the marital home for about three and one-half months after separation. During that time Defendant paid all the taxes, mortgage payments, insurance, utility bills, and all other expenses related to the home while Plaintiff lived in the home. In May 2018, Plaintiff moved out of the home and Defendant moved in. Defendant has resided in the home to present and has paid all related expenses. The Court finds this factor indicates the need for an unequal distribution."

Plaintiff contends the only indebtedness on the property was a $49,000 advance on the HELOC taken out by Defendant in December 2017. Further, Plaintiff argues "no evidence was presented that [Defendant] paid" all the expenses associated with the former marital residence for the three and a half months Plaintiff lived in the

15

residence after the parties separated.

Plaintiff objects to the trial court's determination that Defendant paid "all other expenses related to the home." However, the trial court heard evidence that Defendant paid the necessary expenses to upkeep the former marital residence including paying the home's mortgage, insurance, taxes, and utilities even while he was not living there. In fact, Plaintiff testified that Defendant paid the mortgage, line of credit, insurance, "and those types of things" on the former marital residence. Defendant argues that Plaintiff's contention that the entire application of the (11a) distributional factor should be disregarded "simply because there was not enough evidence to support *all* expenses were paid by [Defendant] ignores the fact that there was evidence of the large, necessary expenses required to keep the property from being taken or foreclosed." We agree. The trial court compiled a list from the evidence presented of the necessary expenses for the property sufficient to support its finding of distributional factor (c)(11a).

Next, Plaintiff challenges finding of fact 34 which states:

> NCGS 50-20(c)(12) - Any other factor which the court finds to be just and proper. Defendant inherited stock from his grandmother when she died. Shortly after the marriage, he sold this stock to pay for the marital home. It is clear to the Court that this was a gift to the marriage and the marital residence and is marital property. Defendant also took out a HELOC on his separate property to help pay for the marital home and eventually had to sell that property to pay off the loan. Plaintiff contributed none of her own monies toward the marital home. The Court finds this factor indicates the need for an unequal distribution.

16

Plaintiff argues the evidence established "that the parties contributed substantial marital monies towards the marital residence and the shop" and that in this finding, the court "attributed the HELOC loan used for the construction of the house and shop as being [Defendant's] contribution of his separate monies but then classified it as a marital debt." In short, Plaintiff suggests the trial court erred in finding the Racetrack Road home to be Defendant's separate property while classifying the equity loan taken on the home to be marital debt.

N.C. Gen. Stat. § 50-20(b)(2) defines separate property as all real or personal property acquired by a spouse prior to marriage. Because Defendant acquired the Racetrack Road property prior to marriage, it is separate property. Additionally, the evidence shows that Defendant never placed Plaintiff's name on the deed to the property during their marriage and never transferred any interest in the property to her, so that Defendant continued to be the sole owner of the property. Marital property is defined as all real or personal property acquired by either or both spouses during the marriage and prior to the date of separation. N.C. Gen. Stat. § 50-20(b)(1). Additionally, a marital debt is one incurred during the marriage and before the date of separation, by either spouse or both spouses, for the joint benefit of the parties. *Huguelet v. Huguelet*, 113 N.C. App. 533, 536, 439 S.E.2d 208, 210 (1994). Here, the parties used the Racetrack Road property as a means of collateral to acquire a loan and incur debt during the marriage and prior to separation for the benefit of both

17

parties, thus making the debt marital. Furthermore, the loan was acquired in order to make improvements to the parties' former marital residence. Therefore, it was not error for the trial court to find that Defendant used his separate property as collateral to obtain marital debt.

Furthermore, the evidence presented during the hearing shows that Defendant used much of his separate property to pay for the construction of and improvements to the former marital residence: (1) the separate property of stocks gifted to him by his grandparent, and (2) the separate Racetrack Road property as collateral for a loan to be used to construct the former marital residence and property. There was no evidence presented that Plaintiff contributed her own money towards the former marital residence. Thus, there was evidence to support the trial court's finding of fact 34, and the trial court properly determined unequal distribution of property was equitable through consideration of the distribution factors in N.C. Gen. Stat. § 50-20(c).

**D. Trial court's distribution of the parties' marital property.**

Finally, Plaintiff contends the trial court abused its discretion in making an unequal distribution of the parties' marital estate and points us to aforementioned arguments. Plaintiff acknowledges that equitable distribution of property is an area of law in which the trial court has "sound discretion," and appellate courts give great deference to the trial court's findings and conclusions. *Cunningham v. Cunningham*, 171 N.C. App. 550, 555, 615 S.E.2d 675, 680 (2005). After careful consideration of

Plaintiff's arguments, we conclude the trial court did not abuse its discretion in (1) failing to enter an order to set aside the 2019 stipulation; (2) not using verbatim statutory language in its finding that equal distribution is not equitable; and (3) finding three distributional factors supported the need for an unequal distribution of the parties' marital estate. We conclude the evidence supported the trial court's findings of fact and conclusions of law, and the trial court's unequal distribution is supported by sound and logical reasoning.

### III.    Conclusion

For the reasons set forth above, we affirm the trial court's equitable distribution judgment and order.

AFFIRMED.

Judge THOMPSON concurs.

Judge ARROWOOD dissents by separate opinion.

19

ARROWOOD, Judge, dissenting.

For the reasons set forth below, I dissent from the majority's opinion because I believe the parties and the trial court are bound by the 14 January 2019 stipulations, which established the Racetrack Road property as marital property. This stipulation undercuts the reasons given by the trial court with respect to the basis for an unequal distribution and necessitates the reversal of the trial court's order. Thus, I would reverse the trial court's order and remand for further proceedings.

"Parties may establish by stipulation any material fact that has been in controversy between them. Where the stipulations of plaintiff and defendant have been entered of record . . . the parties are bound and cannot take a position inconsistent with the stipulations." *Thomas v. Poole*, 54 N.C. App. 239, 241 (1981) (citations omitted). "Where facts are stipulated, they are deemed established as fully as if determined by a jury verdict." *Id.* In other words, a stipulation is "binding in every sense" and prevents the party who agreed to it "from introducing evidence to dispute it and relieving the other party of the necessity of producing evidence to establish [it]." *Id.* Although a party may wish to have a stipulation set aside, they must " 'do so by some direct proceeding, and, ordinarily, such relief may or should be sought by a motion to set aside the stipulation . . . .' " *Moore v. Richard W. Farms, Inc.*, 113 N.C. App. 137, 141 (1993) (quoting *Norfolk Southern Railway Co. v. Horton*, 3 N.C. App. 383, 389 (1969)).

*ARROWOOD, J., dissenting.*

"While a stipulation need not follow any particular form, its terms must be definite and certain in order to afford a basis for judicial decision[.]" *Id.* (cleaned up). When construing stipulated facts, this Court "must attempt to effectuate the intention of the party making the stipulation as to what facts were to be stipulated without making a construction giving the stipulation the effect of admitting a fact the party intended to contest." *In re I.S.,* 170 N.C. App. 78, 87 (2005) (citation omitted).

Here, defendant and plaintiff made a clear and definite agreement regarding the classification of the Racetrack Road property in their 14 January 2019 stipulations filed with the trial court. Specifically, the first stipulation plainly stated, "*Plaintiff and Defendant own marital property located at* 2323 Persnickety Lane, Grifton, North Carolina *and 4080 Racetrack Road, Grifton[,] North Carolina.*" (emphasis added). This statement clearly shows that the Racetrack Road property was, in fact, marital property as stipulated. The third stipulation in the filing further reinforces this agreement as to the property's classification by stating that "the value of *the marital property located at 4080 Racetrack Road* . . . is valued at $46,563.00"— thus again referring to it expressly as marital property. (emphasis added).

In my view, the subsequent pre-trial order stipulations were in direct conflict with the 14 January 2023 stipulations. The pre-trial order's Schedule E indicates that the parties disagreed on the classification of the Racetrack Road property, with plaintiff contending that it was marital property and defendant claiming it was his

separate property. Such a statement directly conflicts with the 14 January 2019 stipulation that, as discussed above, indisputably classified the property as marital.

Although defendant later moved to set aside the 14 January 2019 stipulations on 2 August 2022, the trial court never entered an order ruling on the motion, nor did the trial court make any findings or conclusions regarding the motion in its 31 August 2022 judgment and order. Had the trial court ruled on this motion and set aside the earlier stipulations, the latter stipulations could have appropriately been considered competent evidence. However, without such a ruling, I cannot agree with the majority that the trial court properly applied all stipulations when it, in fact, disregarded one. *See Despathy v. Despathy*, 149 N.C. App. 660, 662 (2002) (explaining that stipulations are considered judicial admissions and that judicial admissions are binding on the court); *Crowder v. Jenkins*, 11 N.C. App. 57, 63 (1971) ("[Stipulations] are conclusive and binding upon the parties and the trial judge." (citations omitted)). I am concerned this result undercuts our case law with respect to setting aside stipulations through a "direct proceeding" and permits lower courts to relieve parties of binding stipulations without following proper procedures. *See Moore*, 113 N.C. App. at 141.

Further, because the parties stipulated that the Racetrack Road property was marital, I also agree with plaintiff's contention that there was no competent evidence

to support the trial court's Finding of Fact 34. Specifically, Finding of Fact 34 states that

> Defendant also took out a HELOC *on his separate property* to help pay for the marital home and eventually had to sell that property to pay off that loan. *Plaintiff contributed none of her own monies toward the marital home.* The Court finds this factor indicates the need for an unequal distribution. (emphasis added).

Such a finding substantially conflicts with the evidence. As stipulated in the 14 January 2019 filing, the HELOC was taken out on marital property—not defendant's separate property—to help pay for the marital home. Additionally, the Racetrack Road property was later sold to help pay off the marital home; thus, marital property was again used to help pay for the marital home. Consequently, the trial court's finding that plaintiff contributed none of her own money to the marital home is not supported by competent evidence.

Even assuming that the trial court would have still concluded an unequal division of the marital property was equitable in favor of defendant, *see Mugno v. Mugno*, 205 N.C. App. 273, 288 (2010) ("A single distributional factor may support an unequal division."), I believe the trial court's calculation of the division of marital property is incorrect due to the failure to account for the Racetrack Road property as marital property. Accordingly, I would reverse the trial court's order and remand for re-hearing on equitable distribution.